IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROBERT D. KEGLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-12-146-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Robert D. Kegley requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

-1-

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he

---

[2] Step One requires the claimant to establish that he is not engaged in substantial gainful activity.  Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities.  If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied.  If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born December 13, 1973, and was thirty-six years old at the time of the most recent administrative hearing. (Tr. 32, 251). He completed the eleventh grade while taking special education classes, and has worked as a heavy equipment operator, material handler, and skitter operator. (Tr. 22, 284). The claimant alleges that he has been unable to work since December 26, 2006, due to herniated discs, bulging discs, deterioration, arthritis, and inability to read or write. (Tr. 279).

### Procedural History

On August 16, 2006, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Glenn A. Neel conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated June 23, 2009. (Tr. 135-144). The Appeals Council vacated and remanded the case (Tr. 146-148), and ALJ Osly F. Deramus conducted a second administrative hearing and determined that the claimant was not disabled in a written opinion dated June 25, 2010. (Tr. 11-24). The Appeals Council then denied review, so ALJ Deramus's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation.  He found that the claimant retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but that he had nonexertional limitations due to psychological pathology in that he was limited, but could understand, remember, and perform simple routine unskilled tasks and semi-skilled detailed tasks (but not complex) skilled tasks.  (Tr. 17).  The ALJ thus concluded that the claimant was not disabled because he could return to his past relevant work as a heavy equipment operator, material handler, or skitter operator, or alternatively, that he was not disabled under Rule 204.00 of the Medical-Vocational Guidelines, *i. e.*, "the Grids."  (Tr. 22-23).

## Review

The claimant contends that the ALJ erred by (i) failing to find his low back and neck pain were severe impairments, and (ii) by improperly determining that he could perform his past relevant work, in light of his pain and psychological impairments. The undersigned Magistrate Judge finds that the claimant *did fail* to perform a proper step four assessment of *all* of the claimant's impairments, and the decision of the Commissioner should therefore be reversed.

The ALJ found that the claimant had the severe impairments of borderline intellectual functioning and learning disorder NOS, but no severe physical impairment. (Tr. 13).  As to the claimant's physical impairments, he was treated for a back injury in 2003 with physical therapy and anti-inflammatories, and Dr. Drew Temple reported he did "wonderfully" with that so that by December 9, 2003, he had a negative straight leg

raise test.  (Tr. 395).  August 2003 MRIs revealed the claimant had desiccation and bulging of the discs and narrowing from L2-3 through L5-S1, being most prominent at L4-5 causing mild to moderate stenosis.  (Tr. 397).  Dr. Gordon B. Strom performed a consultative examination on October 6, 2006, finding that the claimant's impairments included, *inter alia*, illiteracy, closed head trauma with possible recent and remote memory loss, history of degenerative joint disease involving the lumbar spine, chronic back pain, and possible radiculopathy involving the L4-5 disc space on the left.  (Tr. 345).  His recommendation was that "this patient does have significant learning disability and certainly would have difficulty performing any kind of skilled labor.  He reportedly has significant degenerative back disease and I suspect is limited for jobs requiring stooping, bending or lifting.  The patient was able to ambulate in the clinic, but walked slowly with a wide based gait favoring his left leg, unable to walk in a heel/toe fashion."  (Tr. 345).  He also noted the claimant had limited range of motion with regard to back extension and flexion, neck extension, hip flexion, and knee flexion.  (Tr. 339).  The claimant was also treated at Kiamichi Family Medical Center for his chronic neck and back pain during 2007 and 2008.  (Tr. 386-389).  Dr. Steven Rowlan (who works at the same clinic as Dr. Temple), conducted a further consultative evaluation on March 4, 2009.  He reported that he had difficulty getting the claimant to flex or extend his lumbar spine, but also commented that the claimant was "extremely muscular through his shoulders, back, and legs."  (Tr. 403).  AP lateral radiographs revealed moderate degenerative arthritis with some anterior spur formation, as well as increased anterior posterior diameter of the vertebral body at L3-4.  (Tr. 404).  Dr. Rowlan also completed a

Medical Source Statement, indicating he believed the claimant could lift/carry up to twenty pounds frequently, sit eight hours in an eight-hour workday, stand/walk seven hours, and that he was limited by back pain. (Tr. 409-410). He further indicated that the claimant could frequently climb stairs, ramps, ladders, or scaffolds, but only occasionally stoop, kneel, crouch, or crawl. (Tr. 412). Dr. Thomas Salyer also treated the claimant in Idabel, Oklahoma on October 6, 2009, assessing him with, *inter alia*, spinal stenosis, and herniated nucleus pulposus. (Tr. 439).

As to the claimant's mental impairments, Dr. Randy Crittenden conducted a psychological evaluation including an IQ assessment, on January 9, 2007. Under WAIS-III, the claimant obtained a Verbal IQ score of 67, a Performance IQ of 70, and a Full Scale score of 66. (Tr. 359). Dr. Crittenden's diagnostic impression included findings that the claimant had a learning disorder NOS, occupational problems, as well as mild mental retardation (rule out). Dr. Crittenden noted that it was ruled out "because no prior medical evidence of mental retardation was available," but noted that "testing was suggestive of a high level functioning mild mental retardation individual." (Tr. 360).

At the first administrative hearing, the claimant testified that he completed the eleventh grade while taking special education classes, that he can read some but needs newspaper articles explained to him, and that he needed help to fill out his disability applications. (Tr. 85-86). He testified that he has pain in his lower back, legs, and neck into his left arm, and that the pain all runs together. (Tr. 87-88). He stated that the pain was daily, and that it was often accompanied by numbness and tingling. (Tr. 89). He stated that his only income was food stamps, and that he took over-the-counter

medications for his pain. (Tr. 92-94). He was unsure of how long he could sit, stand, or walk, or how much he could carry, but he stated that he rests up to half the day and that his fiancée and mother take care of the cooking and cleaning. (Tr. 94-99). He also stated that he could not bend over to pick up a rock because "it would break my back." (Tr. 97). At the second hearing, the claimant further testified that he can read more than he can understand, and that he can read basic street signs. (Tr. 41-43). The claimant's attorney discussed with the ALJ as to whether the claimant had a severe impairment related to his spine, and the ALJ stated, "[i]t looks like to me, from what I've seen, that he has a, a severe impairment. . . . [A]fter looking at the files, in fact, we have a couple of, of problems. And that, and that's the back problem and the psychological issues[.]" (Tr. 51). The attorney then stated, "If we've got severe impairments other than the, the measured IQ, then I have no questions." (Tr. 51).

    In his written opinion, the ALJ summarized the claimant's testimony, as well as the medical evidence. At step two, he stated that the claimant's complaints of back pain were largely the result of two isolated incidents that were satisfactorily resolved, and further rejected the opinions of Dr. Temple, Dr. Rowlan, and Dr. Strom. Specifically, the ALJ noted that Dr. Rowlan's assessment was discordant with his notation regarding the claimant's muscular appearance. (Tr. 14-15). At step four, the ALJ noted the claimant's WAIS-III IQ scores, (erroneously) stated that Listing 12.05C deals with mental retardation (as opposed to intellectual disability), and concluded that the claimant's impairments were more consistent with a diagnosis of borderline intellectual functioning as opposed to mental retardation. (Tr. 18-19). He then found that the claimant's learning

disorder did not establish any additional and significant work-related limitations of function, determined that the claimant was not credible, and determined that the claimant was capable of performing a narrowed range of work at all exertional levels.  His pain analysis was as follows:  "contrary to the claimant's allegations of disabling pain, he has exhibited relatively mild symptoms," along with a boilerplate list of "certain observable manifestations" that he expected to see with severe pain.  (Tr. 22).

      The claimant argues that the ALJ erred in failing to classify his back and neck pain as severe impairments.  Because the ALJ did find that the claimant had severe impairments, any failure to find the claimant's additional impairments severe at step two is considered harmless error because the ALJ would nevertheless be required to consider the effect of these impairments and account for them in formulating the claimant's RFC at step four.  *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two].  Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004) and 20 C.F.R. § 404.1523.  *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two.  His failure to find that additional alleged impairments are also severe is not in itself cause for reversal.  But this does not mean the

omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted].  But here the error *was not* harmless, because the ALJ failed to properly account for the claimant's back pain in assessing his RFC.  *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five.") [unpublished opinion].  *See also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two.  He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion].

The claimant's arguments are particularly persuasive in light of the history of this case and Listing 12.05C.  ALJ Neel originally found that the claimant had the severe impairments of degenerative disc disease of the lumbar spine, degenerative joint disease of the cervical spine, learning disorder (NOS), and borderline intellectual functioning. (Tr. 137).  The Appeals Council reversed and directed the ALJ to, *inter alia*, obtain additional evidence concerning the claimant's mental impairments and to clarify the nature and severity of the claimant's mental impairments.  (Tr. 147).  On remand ALJ Deramus rejected all discussion of the claimant's pain-producing impairments despite his statements to the contrary at the administrative hearing, and instead listed a number of "observable manifestations" of pain that he asserted were not present.  (Tr. 22).  Had the

ALJ not substituted his medical opinion for that of the claimant's physicians in order to reject all evidence regarding the claimant's back pain, *see Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996) ("The ALJ may not substitute his own opinion for that of claimant's doctor."), *citing Sisco v. United States Department of Health & Human Services*, 10 F.3d 739, 743 (10th Cir. 1993) and *Kemp v. Bowen*, 816 F. 2d 1469, 1475 (10th Cir. 1987), there is a strong indication that the claimant would meet a listing, *see* 20 C.F.R. pt. 404, subpt. P., app. 1, Listing 12.05C (Intellectual Disability).

Because the ALJ failed to properly account for the claimant's non-severe impairment, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis. If such analysis on remand results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 26th day of September, 2013.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma